Robert E. Kennedy v. Commissioner.
Kennedy v. Commissioner
Docket No. 3882-69 SC.
United States Tax Court
T.C. Memo 1970-58; 1970 Tax Ct. Memo LEXIS 301; 29 T.C.M. (CCH) 255; T.C.M. (RIA) 70058; March 5, 1970, filed. Robert E. Kennedy, pro se, 5626 Loretto Ave., Philadelphia, Pa., David W. Winters, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined an income tax deficiency of $147 against the petitioner for the year 1966. Respondent's notice of deficiency *302 dated April 30, 1969, reflects the following: Statutory deficiency
$147.00
Overpayment claimed (not refunded)
$447.64
Eliminate - Federal gaso- line tax (8.93)
438.71
Net overpayment
($291.71)
By error respondent mailed to petitioner a refund check for 1966 in the amount of $495.87, representing an overpayment of $439.04 plus interest. Petitioner claimed in his petition an additional deduction of $1,276.01 which was not claimed in his Federal income tax return for 1966. The issues presented for decision are: (1) Whether petitioner maintained a tax home in Philadelphia while he worked for United Air Lines in Chicago, so that he may deduct claimed traveling expenses; (2) whether petitioner is entitled to deduct the cost of new clothing as a business expense; (3) whether petitioner is entitled to deduct the value of his old clothing given to a charitable organization; (4) whether petitioner is entitled to deduct "strike expenses"; and (5) whether petitioner qualifies for a tax credit for non-highway use of gasoline under section 6421 (c)(3)(A)(ii), Internal Revenue Code of 1954. [1]
*303 Findings of Fact Some of the facts were orally stipulated in the record and are so found. Robert E. Kennedy (herein called petitioner) resided in Philadelphia, Pennsylvania, at the time he filed his petition in this proceeding. He filed his Federal income tax return for the year 1966 with the district director of internal revenue, Philadelphia, Pennsylvania. Petitioner is a commercial airline flight officer. In November 1965, he applied for a position as a flight officer with United Air Lines. United employed him on January 10, 1966, and sent him to school at its flight training center in Denver, Colorado, until April 9, 1966. On his 1966 Federal income tax return petitioner claimed unreimbursed traveling expenses of $570.47 while he was in Denver. Respondent allowed the deduction. In April 1966, United assigned petitioner to his first flight domicile in Chicago, 256 Illinois, where he lived in an apartment. Petitioner did not choose Chicago, and would have preferred another assignment. By the terms of his contract with United petitioner was obligated to stay in Chicago for at least six months, but after that period he could request transfer to another location. His request *304 would be granted if a vacancy existed at the other location and if the vacancy was not filld by a transferee with more seniority. In 1966 United was expanding so rapidly, and vacancies were so numerous, that petitioner expected little or no difficulty in transferring out of Chicago. In fact, after six months, he was able to transfer to another location he preferred. On October 22, 1966, petitioner was transferred to San Francisco in response to his first request. He remained there until August 1968, when he was transferred to New York. At the time of trial petitioner was flying out of New York, while living in Philadelphia. For 16 years prior to his joining United, petitioner had resided at his uncle's home at 5626 Loretto Avenue, Philadelphia, Pennsylvania. In September 1966, he purchased this house from his uncle. While petitioner was stationed at Denver, Chicago, and San Francisco during 1966, he left various possessions in the Philadelphia house. For example, he left tools, books, some furniture, clothing which was too large, automobile and airplane parts, and model electric trains. He also left at an airfield in Philadelphia two airplanes worth several thousand dollars. *305 In his petition the petitioner claimed a deduction of $1,276.01 for traveling expenses, including amounts expended for meals and lodging. At the time of his November 1965 interview with United, petitioner was 40 pounds overweight. Anticipating that his weight could affect his prospects of being employed by United, petitioner began losing weight. By January 10, 1966, petitioner had lost 15 pounds, and by the end of his training he had lost a total of 38 pounds. Although United did not order petitioner to lose weight, it did inform him that he was overweight, and petitioner kept United informed of his weight loss. Because of the importance of physical health to airline pilots, petitioner's weight loss was necessary to his employment. Petitioner, in his slimmer form, needed a new wardrobe. He spent $722.82 for new clothes, and claimed $500 of such amount as a business expense on his 1966 Federal income tax return. None of this amount was spent for uniforms. Petitioner directed his mother to give some of his ill-fitting clothes to charitable organizations, which she did. Petitioner did not prove that the value of this clothing exceeded $100. From July 8, 1966, until August 19, 1966, United's *306 flight operations were shut down by a mechanics' strike. From July 18 until August 19, 1966, petitioner was placed on furlough without pay. Petitioner went to Philadelphia, looking for some sort of temporary work. Since petitioner still had to maintain his apartment in Chicago, he thought he was "entitled to something equal to per diem, and so forth, and I guess that is basically what my strike expense was." On his 1966 Federal income tax return petitioner deducted $289 for "strike expenses." Petitioner's 1966 Federal income tax return was dated June 7, 1967, and was received by the district director of internal revenue at Philadelphia on June 12, 1967. Attached to the return was a Form 2688, requesting an extension of time for filing. On his income tax return petitioner claimed a credit of $8.93 for taxes paid for non-highway use gasoline. Respondent does not dispute the amount of the credit, but disallowed it because the return and the claim were not timely filed. Opinion 1. Claimed Traveling Expenses. Generally, amounts expended for food and lodging are "personal, living or family expenses" and are nondeductible under section 262 of the Code and section 1.262-1(b)(3) and *307 (5), Income Tax Regs. However, in certain circumstances, such amounts are deductible as ordinary and necessary business expenses under section 162(a)(2). [2] An essential requirement is that such expenses be paid or incurred "while away from home 257 in the pursuit of a trade or business." See Commissioner v. Flowers, 326 U.S. 465 (1946). For purposes of section 162(a)(2), "home" means the taxpayer's principal place of employment and not where his personal residence or house is located, if it is located in a different place from his principal place of employment. See Commissioner v. Stidger, 386 U.S. 287 (1967); Ronald D. Kroll, 49 T.C. 557 (1968); Mort L. Bixler 5 B.T.A. 1181 (1927). *308 If a taxpayer accepts temporary work away from his principal place of employment, he is "away from home." E.G. Leach 12 T.C. 20 (1949);, Harry F. Schurer, 3 T.C. 544 (1944). If he accepts work at a new location for an indefinite or indeterminate period, the new location becomes his new "home" for tax purposes. Commissioner v. Peurifoy, 254 F. 2d 483 (C.A. 4, 1957), affirmed per curiam 358 U.S. 59 (1958); Ronald D. Kroll, supra at 562. Naturally, because of his mobility, a bachelor will often have greater difficulty than a married man in showing that it is unreasonable for him to maintain a residence near his trade or business, or that a duplication of expenses is other than a personal whim. Rev. Rul. 60-189, 1960-1 C.B. 60, 68. The petitioner contends that because he was assigned, contrary to his request, to Chicago, and because he intended to transfer from there after six months, his work in Chicago was only temporary. It is entirely irrelevant that petitioner did not care for his Chicago assignment. No doubt many taxpayers with permanent employment would prefer a new job, a different city or a more *309 pleasant climate. What is significant here is that the petitioner had only one principal place of employment and that was Chicago until he was transferred to San Francisco. The impermanence of an assignment alone does not make it "temporary." Cf. Floyd Garlock, 34 T.C. 611, 616 (1960). Petitioner had no trade or business in Philadelphia in 1966. It is true that he left a few personal possessions at his uncle's house in Philadelphia, and that he left two airplanes there. It is also true that he bought his uncle's house in September of that year. But these actions were personally, not business, motivated. The evidence shows that petitioner had no immediate plans for returning to work in Philadelphia. His few possessions did not tie him there; and he had no family to consider in choosing his principal place of employment. His choice of transfer from Chicago was San Francisco, not Philadelphia. Under the circumstances Philadelphia cannot be regarded as his tax home during 1966. Consequently, we hold that the claimed traveling expenses in Chicago must be disallowed. 2. New Clothes. During 1966 petitioner lost weight, as required for his new job with United. He claimed a *310 $500 deduction for the new clothes he purchased. All were ordinary street clothes. It is well settled that only clothes such as uniforms, which are required for employment and which are not suitable for general or personal wear, qualify as business expenses under section 162. See, e.g., Jerome Mortrud, 44 T.C. 208 (1965); Betsy Lusk Yeomans, 30 T.C. 757 (1958). Accordingly, we hold that respondent properly disallowed the claimed deduction as a personal expense. 3. Old Clothes Donated. As indicated in our findings of fact, the petitioner's mother gave his old clothes to charitable organizations. However, in view of petitioner's sketchy testimony, we have found the value of the clothing to be approximately $100. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). 4. Strike Expenses. Petitioner seeks to deduct $289 as "strike expenses." According to his testimony, the money was paid for rent, food and other necessities while he was not working during the mechanics' strike at United Air Lines. Clearly these are ordinary living expenses and are not deductible. Section 1.262-1(b), Income Tax Regs. With regard to this claimed deduction the petitioner *311 testified: "I didn't know any ground for it, and I still don't know any ground for it." Neither do we. 5. Nonhighway Federal Gasoline Tax Credit. Petitioner claimed a credit of $8.93 for taxes paid on nonhighway use gasoline under section 6421. To be entitled to the credit petitioner was required to file a timely return. Section 6421(c)(3)(A)(ii). He testified that on April 17, 1967, the last day for filing, he mailed to respondent a letter requesting an extension of time for filing his Federal income tax return for 1966. Petitioner retained no copy of the letter and respondent has no record of receiving it. In addition, he attached a Form 2688 to his late return. Under the circumstances we are unable to accept his testimony on this point. Since his return was not mailed 258 until June 7, 1967, and his application for an extension of time to file the return was also untimely, petitioner is not entitled to the credit. To reflect our conclusions on the disputed issues, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or busines, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and↩